**W. H. Pat O'BRYAN, Plaintiff,**

v.

**Stephen S. CHANDLER, Defendant.**

**Civ. No. 63–339.**

United States District Court
W. D. Oklahoma.

July 1, 1964.

Sam Sullivan, Durant, Okl., Joseph Rarick, Norman, Okl., for plaintiff.

John H. Cantrell, Lynn J. Bullis, Oklahoma City, Okl., Granville Tomerlin, Floyd Rheam, Claude Rosenstein, Tulsa, Okl., for defendant.

HARPER, District Judge.

W. H. Pat O'Bryan, hereinafter referred to as plaintiff, filed suit on September 25, 1963, against the defendant, a United States District Judge for the Western District of Oklahoma, in the District Court of Oklahoma County, State of Oklahoma. The plaintiff's cause of action is in two. counts. The first count seeks damages for malicious prosecution, libel and slander in the amount of $5,000-000.00 and the second count seeks an additional $5,000,000.00 as punitive damages. The suit was filed by the plaintiff after a criminal indictment which had been returned against the plaintiff by the grand jury in the Western District of Oklahoma had been dismissed.

The case was duly removed to the Federal Court and the plaintiff's motion to remand overruled. The case is now

before the court on defendant's motions to strike, to state separately, and to dismiss, all having been presented to the court by very exhaustive briefs and lengthy oral argument. The court in this memorandum opinion and order will concern itself only with the defendant's motion to dismiss for failure to state a cause of action.

■ Cases are legion wherein the appellate courts have dealt with the problem of attempts to terminate litigation believed to be without merit by dismissing a complaint for failure to state a cause of action, and the appellate courts generally agree that in order to justify such a dismissal by the trial court it must appear as a matter of law that under no state of facts which the plaintiff could prove in support of the claims pleaded would he be entitled to any relief. The Supreme Court in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80, said:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

■ And so, with respect to the motion to dismiss we must examine the plaintiff's petition and consider it in the light of this accepted rule, but before doing so we must turn to the law with respect to the civil liability of judges in order to evaluate the petition under the accepted rule of law. The law has long been well settled that judges are exempt from civil liability for acts done by them in the exercise of their judicial function. Many, many decisions to this effect pertaining to judges and other public officials are reported. One of the early decisions of the Supreme Court, Bradley v. Fisher, 13 Wall 335, 357, 20 L.Ed. 646; discusses the matter in great detail. This case has repeatedly been cited by the courts and we, therefore, turn to

it for guidance. At page 651 of 20 L.Ed. the court had this to say:

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. * * * But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him. * * *"

And then, further:

"The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts, existing when there is juris-

diction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into, judges would be subjected to the same vexatious litigations upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must in such cases resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed."

As expressed in the *Bradley* case, a judge is exempt from civil liability even when he acts in excess of his jurisdiction and such acts are done maliciously and with bad motives. The United States Supreme Court has expressed the policy that only when there is a clear absence of all jurisdiction over the subject-matter can a judge be held civilly liable. The court in Bradley v. Fisher distinguished between a judge acting in excess of jurisdiction and a judge acting in clear absence of all jurisdiction. Only in the latter situation is a judge's authority considered usurped authority.

A recent United States Supreme Court opinion weighs the two conflicting considerations or policies which confront the court in this case. The conflicting policies are, on the one hand, "the *protection of the individual* citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government;" and on the other, "the *protection of the public in-*terest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." (Emphasis added.) Barr v. Matteo, 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959). The Supreme Court cited Bradley v. Fisher, supra, as controlling law, and quoted from an opinion written by the late Judge Learned Hand, as follows:

" 'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most *resolute,* or the *most irresponsible,* in the *unflinching* discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that *is quite another* matter from exposing such as have *been honestly mistaken* to suit by anyone who has *suffered from their errors.* As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in *the end better to leave unredressed the wrongs done by dishonest offi-*

cers than to subject those who try to do their duty to the constant dread of retaliation. * * *

" 'The decisions have, indeed, always imposed as *a limitation upon the immunity that the official's act must have been within the scope of his powers*; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. *What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *'* Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581."

As stated by Judge Hand and quoted as controlling by the Supreme Court, public policy dictates that it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Barr v. Matteo, supra, l. c. 572, 79 S.Ct. l. c. 1340. This court must now apply the law, as clearly set forth by the United States Supreme Court, to this case.

The court recognizes that there have been situations in the past which have warranted a judge being held civilly liable (see Manning v. Ketcham, 6 Cir., 58 F.2d 948 (1932)). In that case the judge was found to have no authority to act officially over the subject-matter at hand. There was a clear absence of all jurisdiction. That case fits neatly into the test set forth by the Supreme Court back in 1872 (Bradley v. Fisher, supra). The test to be applied is that *if there is a clear absence of all jurisdiction then a judge can be held civilly liable,* otherwise he cannot be held civilly liable.

And so in this action with respect to this motion we must examine the plaintiff's petition *to determine if the plaintiff can prove a set of facts in support of his claim which would entitle him to relief under the test we have just set forth.* Attached to the plaintiff's petition and made a part thereof are four exhibits, *Exhibit A* being a copy of the transcript of the remarks of the defendant Chandler to the grand jury, *Exhibit B* being a copy of an indictment returned by the grand jury on November 10, 1961, in the United States District Court for the Western District of Oklahoma against the plaintiff, *Exhibit C* being a copy of *a brief of the United States Attorney* for the Western District of Oklahoma which was handed to Judge Daugherty of said court, and *Exhibit D* being a copy of an order entered by Judge Daugherty in the criminal case against the plaintiff dismissing the case without prejudice.

We must, therefore, consider not only the petition, but the exhibits attached thereto. A careful examination of the petition *discloses many things alleged which pertain only to maliciousness and ill-will on the part of the defendant toward the plaintiff,* and *are of no consequence* in weighing the petition with respect to the above rule, since *such allegations apply only to Count 2 of the indictment regarding punitive damages. The plaintiff* in arguing the motion to the court stated that *Exhibit A attached to the petition correctly sets forth what occurred before the grand jury on the day preceding the indictment,* and so nothing could be accomplished in this instance to grant to the plaintiff the right to file amended pleadings, since the basis of his complaint is Judge Chandler's remarks to the grand jury on November 9th. As a matter of fact, the plaintiff in his brief filed with the court on November 6, 1963, in support of his motion to remand, set out in some detail an analysis of the allegations of the petition, and following such characterization of the petition, at page 11, had this to say:

"Reduced to even more simple terms, the acts of defendant of

which plaintiff complains are the defendant's private meetings and conversations with the foreman of the grand jury in order to induce the foreman to initiate an investigation of the plaintiff, and the defendant's invasion of the grand jury room and the accusation of the plaintiff that the defendant there made. These are the acts about which this court must answer this question: Were these acts under the circumstances under which they were done, done in the performance of the defendant's duties as a United States District Judge?"

The position of the plaintiff at the argument on this motion was the same, which was to the effect that *if the defendant's remarks before the grand jury were within the jurisdiction of the defendant as a judge the plaintiff had no cause of action.* To this court this appears to be a proper position, because it was after the defendant's appearance before the grand jury that the plaintiff was indicted, which led to this suit. The other allegations set forth in plaintiff's petition deal with maliciousness and refer to acts which occurred before this time, and following those acts the grand jury had returned a number of indictments but did not return one against the plaintiff.

So, *the real question for the court* is whether or not the plaintiff's petition based upon what occurred before the grand jury on November 9, 1961, which it is admitted by the plaintiff is completely and entirely set out in Exhibit A attached to the petition, was the proper basis for a civil action against the defendant. In other words, was this a judicial act on the part of the defendant or was there a clear absence of all jurisdiction?

██ The petition discloses that we are dealing with an instance which occurred in a United States district where there is more than one judge; that the defendant, one of those judges, had originally charged this grand jury, had designated the foreman and deputy foreman of the grand jury; and that on the occa-

sion in question went to the grand jury room, constituted it a court room and delivered the remarks here complained of. We must realize that a grand jury has no existence aside from the court which calls it into existence and upon which it is attending. As the Supreme Court said in Brown v. United States, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609, "A grand jury is clothed with great independence in many areas, but it remains an appendage of the court * * *." While it may be said that the act of Judge Chandler in going to the grand jury room and constituting it a court room was rather unusual, such action on his part was not one lacking in jurisdiction. This was a grand jury of the court. It had been originally charged by him and *he had gone there at the request of the grand jury.* The order filed on September 28, 1962, in the criminal case (Exhibit D attached to and made a part of the petition) sets out the basis for the dismissal of the criminal case without prejudice, and a part of the order reads as follows:

"However, even though on this occasion the grand jury requested the presence of the chief judge of this court, it is possible that a technical irregularity occurred in the proceeding in that the court as such, mentioning the defendant by name, supplied information in connection with the matter under consideration by the grand jury and regarding which an indictment was returned, and that said indictment should, therefore, be quashed without prejudice."

What occurred may have been sufficient to warrant the quashing of the indictment, but the order clearly only refers to a possible technical irregularity, which is a far cry from absence of jurisdiction. Defendant's conduct with respect to the grand jury was not so clearly without jurisdiction as to meet the test set out by the United States Supreme Court. The defendant's conduct was not clearly without jurisdiction to have an investigation made concerning things which occurred in his court. The de-

fendant's actions set forth in the petition, even if malicious as alleged, and possibly technically irregular, are not grounds for holding the defendant subject to a civil action.

The court for the reasons stated above sustains defendant's motion to dismiss, and the cause is dismissed.