Stephen S. **CHANDLER**, United States District Judge for the Western District of Oklahoma, Plaintiff-Appellee,

v.

William H. Pat **O'BRYAN**, Defendant-Appellant.

No. 354–70.

United States Court of Appeals, Tenth Circuit.

May 11, 1971.

Rehearing Denied Sept. 9, 1971.

Carl L. Shipley, Washington, D. C. (Merton Hollander and Irwin Goldbloom, Dept. of Justice, Washington, D. C., for United States amicus curiae), for plaintiff-appellee.

Harvey L. Davis and Reagan M. Martin, Dallas, Tex., for defendant-appellant.

Before VAN OOSTERHOUT, MEHAFFY and GIBSON, Circuit Judges.*

FLOYD R. GIBSON, Circuit Judge.

The defendant, W. H. Pat O'Bryan, appeals from a declaratory judgment and injunction entered against him and in favor of the plaintiff, Stephen Chandler, Senior Judge of the United States District Court for the Western District of Oklahoma, enjoining O'Bryan from enforcing a libel judgment (for $50,000)

* All Circuit Judges of the Eighth Circuit sitting by designation.

obtained in the state courts of Oklahoma against Judge Chandler, enjoining him from any further litigation against Judge Chandler, and ordering the judgment in the State court expunged from the record.[1] The facts of this controversy have a long and complex history, and an understanding of the rather narrow legal issues involved in this appeal requires a rather detailed factual statement.

## I. THE FACTS

*A. The Background—the Selected Investments Bankruptcy.*

The controversy between the parties had its origin in the bankruptcy litigation of the Selected Investments, Corporation.[2] The Selected Investments Corporation was an Oklahoma corporation organized in 1930 which dealt in securities with the general investing public. Without going into collateral details, we may say that the organization was a cleverly manipulated, fraudulent scheme which operated for more than 20 years without being discovered. *See* Burns v. United States, 286 F.2d 152 (10 Cir. 1961). Sufficient funds to meet the claims of its investors, thereby avoiding undue complaint which might attract the attention of public authorities, were acquired by the hazardous expedient of not paying income taxes.

However, by the early 1950's, the company had come to the attention of both state and federal taxing authorities and it was apparent that the day of reckoning was fast approaching. Not having a tax attorney on its staff, the company in February 1953 hired the defendant O'Bryan, who was both a certified public accountant and practicing attorney specializing in tax matters, to represent it in the tax litigation. The circumstances of O'Bryan's retention are not entirely clear, as will become evident, but it is undisputed that he in fact spent a good deal of time attending to the corporation's tax problems and was in substantial measure successful in obtaining significant rulings favorable to the corporation.

In the complicated proceedings which ensued with both the state and federal authorities, it became apparent that the company's federal tax liability would be determined in part by decisions in the state courts. In 1957, the Supreme Court of Oklahoma ruled in the company's favor and against the Oklahoma Tax Commission on a claim for more than $500,000 of back state taxes. Selected Investments Corporation v. Oklahoma Tax Commission, 309 P.2d 267 (Okl.1957). Based on this decision, the federal authorities thereupon ruled that all back federal income taxes, if any, owed by the company, would be waived, but that in the future the company's tax liability would be computed differently, resulting in substantially increased payments. It later developed that certain Oklahoma Supreme Court Justices had been the recipients of a bribe in connection with the above decision.

The company was unable to continue its operations in the accustomed manner following the federal ruling as to its future tax liability and attempted to reorganize in a state receivership proceeding. This attempt precipitated in involuntary bankruptcy proceeding which was filed in the federal district court of Chief Judge Chandler.

*B. O'Bryan's Claim in the Bankruptcy Litigation.*

In early March 1958, O'Bryan had several telephone discussions with Selected's bankruptcy trustee involving questions pertaining to O'Bryan's filing a claim against the bankrupt's estate for

---

1. The District Court's opinion is reported in Chandler v. O'Bryan, 311 F.Supp. 1121 (W.D.Okl.1969).

2. Reported cases dealing with the bankruptcy may be found in Carey v. Selected Investments Corp., 319 F.2d 578 (10th Cir. 1963); Burns v. United States, 286 F.2d 152 (10th Cir. 1961); Workman v. Harrison, 282 F.2d 693 (10th Cir. 1960; and Selected Investments Corp. v. Duncan, 260 F.2d 918 (10th Cir. 1958), *cert. denied*, 359 U.S. 914, 79 S.Ct. 584, 3 L.Ed.2d 576 (1959).

legal fees for his work in the tax cases. These conversations left the trustee with the distinct impression that O'Bryan's claim would be based on an oral contract of employment with the company.

On March 24, 1958 O'Bryan filed a claim against the bankrupt's estate of more than $1,000,000 for the reasonable value of his services to the estate, alleging that this represented 10 per cent of the amount of taxes which he had saved the company in the tax litigation. In this claim he stated that he had received no note or security or other evidence of this indebtedness. On May 21, 1958, he amended his claim and alleged it was based on a written contract of October 29, 1954, which he had just found in his files.

On November 3, 1958, O'Bryan's claim came up for hearing in the bankruptcy court, Judge Chandler presiding. The trustee opposed the claim, not on the grounds that O'Bryan had not performed any services for the company, but on the ground that the written contract attached to the amended claim was manufactured and fraudulent, and had actually never been entered into by the parties until after the initiation of the bankruptcy proceedings. As the evidence developed at the hearing, Judge Chandler indicated that he agreed with the trustee's position and that if O'Bryan expected to prevail in his claim, he would have to overcome the evidence of fraud which had been presented. In addition to the inferences to be drawn from O'Bryan's prior conduct in the matter, there was some evidence presented by the trustee tending to indicate that the letterhead on which the contract was written had not been in existence in October 1954, and indeed had not been made up until September 15, 1955. Judge Chandler ordered another hearing to be set for November 10, 1958, and ordered O'Bryan to produce further proof of his claim.

At the November 10 hearing, O'Bryan appeared in person and by an attorney who had not previously represented him in these proceedings. He rested his claim and presented no new evidence.

Judge Chandler thereupon denied the claim, and ordered O'Bryan disbarred from further practice in the federal court. No appeal was taken from either of these rulings.

*C. The First Libel Suit.*

Shortly after the above events, Judge Chandler wrote a letter to the Oklahoma Bar Association seeking O'Bryan's disbarment on account of his conduct in the bankruptcy proceedings. In March 1959, the Bar Association held a public hearing on the charges. No final action was taken by the Oklahoma Supreme Court in this matter until 1963, as discussed more fully below. On October 30, 1959, O'Bryan filed a libel suit in the state court against Judge Chandler, based on the letter written to the Oklahoma Bar Association. Shortly thereafter, Chandler's letter to the Bar Association was disclosed and the language did not talley with that quoted in O'Bryan's complaint. On December 1, 1959, O'Bryan dismissed his libel suit.

*D. The Disbarment Proceedings.*

In September 1959, O'Bryan filed a motion in the bankrupcty proceedings for reconsideration of his claim and restoration of his name to the role of admitted attorneys. This motion was denied by Judge Chandler; O'Bryan appealed and his appeal was dismissed as untimely. O'Bryan, O'Bryan & O'Bryan v. Harrison, 274 F.2d 831 (10th Cir. 1959).

In June 1963, the Oklahoma Supreme Court rendered its decision on O'Bryan's disbarment based on the public hearings held in March 1959. It concluded that the charges were true and ordered him disbarred. State v. O'Bryan, 385 P.2d 876 (Okl.1963), *app. dismissed,* 376 U.S. 649, 84 S.Ct. 983, 11 L.Ed.2d 980 (1964).

In July 1963, O'Bryan filed an original action in madamus in the Tenth Circuit against Judge Chandler, seeking to have the order disbarring him set aside. This was denied on the grounds that he could pursue the usual remedies available to him in the district court. O'Bryan thereupon, in September 1963, filed a

motion to vacate the disbarment order in the district court. No action was taken on this motion, and in January 1966, O'Bryan filed another mandamus action in the Court of Appeals seeking action on his motion to vacate. In October 1966, the Court of Appeals for the Tenth Circuit ordered Judge Chandler to assign the motion to vacate to another judge for hearing and disposition.

The proceedings were assigned to Judge Edwin Langley, of the Eastern District of Oklahoma, who on March 28, 1967, entered an order denying the motion. O'Brien appealed on July 18, 1967, alleging that Langley's order was entered without a hearing as required by the prior Tenth Circuit order. On December 29, 1967, the Tenth Circuit reversed Judge Langley's order, holding that a proper hearing had not been accorded O'Bryan. Judge Chandler thereupon filed a Motion to Clarify, which was treated as a petition for rehearing, in which he contended that O'Bryan's appeal from the order of Judge Langley was untimely. After hearing oral argument, the Tenth Circuit withdrew its order and dismissed the appeal as untimely. In re O'Bryan, 399 F.2d 916 (10th Cir. 1968), *cert. denied*, 394 U.S. 906, 89 S.Ct. 1014, 22 L.Ed.2d 217 (1969).

In 1968, the United States Treasury Department refused to disbar O'Bryan on these charges, and in 1970 the Oklahoma Supreme Court refused to reinstate him. Apparently his certification as a public accountant has not been withdrawn.

*E. The Malicious Prosecution Suit.*

O'Bryan's conduct in the bankruptcy litigation occurred in 1958. Judge Chandler was of the opinion that this conduct violated several federal criminal statutes and urged the United States Attorney to prosecute him. Two successive United States Attorneys in the Western District of Oklahoma refused to do so. Finally, in November 1961, Judge Chandler himself appeared before a grand jury and presented the evidence which he felt warranted prosecution. The grand jury returned an indictment against O'Bryan.

This indictment was dismissed by Judge Frederick A. Daugherty of the Western District of Oklahoma on the grounds that Judge Chandler's presence in the grand jury room was a "technical irregularity" violating the secrecy of grand jury proceedings, without prejudice to the bringing of a new indictment. No new indictment was ever brought.

In September 1963, O'Bryan filed a $10,000,000 malicious prosecution, libel and slander suit against Judge Chandler in the Oklahoma state court, based on Chandler's actions in securing the grand jury indictment. The suit was removed to the federal court, and Judge Roy W. Harper of the Eastern District of Missouri was assigned to hear the case. Judge Harper ruled that Judge Chandler's actions were not wholly outside his jurisdiction as a federal judge and hence he was protected by the doctrine of judicial immunity from liability. O'Bryan v. Chandler, 249 F.Supp. 51 (W.D.Okl. 1964).

O'Bryan appealed from this decision. Judge Chandler was represented in this proceeding by the Department of Justice, the Oklahoma Bar Association as *amicus curiae*, and by private attorneys. On the day set for oral argument, the Tenth Circuit permitted Judge Chandler to file a document (hereinafter the "blue brief") which he styled as an "Official Statement." In the course of this document, Judge Chandler accused O'Bryan of being an accomplice, if not the mastermind, of the bribery of certain members of the Oklahoma Supreme Court in the Selected Investments case.

Some few days before the filing of this document, Judge Chandler called to his office the editor of the *Oklahoma Journal*, a local newspaper, and gave to him a preliminary draft (hereinafter the "tan brief") of the "Official Statement" which differed in some respects from the blue brief as filed, but which included the bribery charge. The day after the oral argument in the case, the *Oklahoma Journal* published a front-page story on the case which was headlined "O'Bryan Called 'Bribe Mastermind'."

Other newspapers in the area carried only short stories on the case and did not include the bribery charge.

O'Bryan filed a motion to strike the "Official Statement" which was denied by the Tenth Circuit; Judge Chandler's request in his "Official Statement" that an injunction and contempt citation be issued against O'Bryan was not acted on. Ultimately the Court affirmed Judge Harper's decision on the judicial immunity issue. O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965), *cert. denied*, 384 U.S. 926, 86 S.Ct. 1444, 16 L.Ed.2d 530 (1966).

*F. The Second Libel Suit, and the Declaratory Judgment Action.*

It is the following events which comprise the factual basis of the current litigation.

The Tenth Circuit decision in the malicious prosecution suit, holding Judge Chandler's actions before the grand jury were protected by the doctrine of judicial immunity, was rendered November 30, 1965. On December 8, 1965, O'Bryan filed another libel suit in the amount of $2,500,000 against Judge Chandler, this one based on the "tan brief" of the "Official Statement" which Judge Chandler released to the newspaper editor prior to oral argument in the malicious prosecution case, accusing O'Bryan of being the mastermind in the Oklahoma Supreme Court bribery. Judge Chandler removed this suit to the federal district court pursuant to 28 U.S.C. § 1442(a) (3).[3]

Judge Richard B. Austin of the Northern District of Illinois was assigned to hear the removal action and conducted a full hearing in April 1966. He determined that the cause was not removable because Judge Chandler's actions were not under color of office nor in the performance of his official duties.[4] Accordingly, he remanded the case to the State court. The order of remand is not reviewable under 28 U.S.C. § 1447(d), as is discussed *infra*.

Trial was had in the State court on the libel suit in February 1967. The state trial judge directed a verdict in favor of O'Bryan on the issue of liability, and the jury awarded $40,000 in compensatory damages and $10,000 in punitive damages. Following the rendition of this verdict, and prior to the entry of judgment, on February 26, 1967, Judge Chandler again removed the case to the federal district court. Sometime thereafter, the State court entered a judgment on the verdict.

O'Bryan filed a motion to remand the case in the second removal. The action was assigned to Judge Frank J. Battisti of the Northern District of Ohio. On January 13, 1968, Judge Chandler filed a declaratory judgment action "in the nature of a Bill of Peace" in the federal district court, alleging that O'Bryan was harassing him with many groundless actions, seeking to enjoin O'Bryan from further litigation against him, and seeking to have the state libel judgment enjoined and expunged. This declaratory judgment action was also assigned to

---

3. 28 U.S.C. § 1442 provides in pertinent part:

 "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

 \* \* \* \* \*

 "(3) Any officer of the courts of the United States, for any Act under color of office or in the performance of his duties."

4. Judge Austin's order of May 24, 1966, reads as follows:

 "It is therefore ordered, adjudged and decreed that the Defendant's acts complained of in the Plaintiff's Original Petition were not done in the performance of his official duties as a Judge of the District Court of the Western District of Oklahoma, that they were not acts done under color of judicial office. There is no other Federal issue involved therefore the Plaintiff's motion to remand is granted and the case is remanded to the State Court from whence it came."

Judge Battisti, who ruled that the remand motion in the removed libel case would be held in abeyance until the disposition of the declaratory judgment action. Thereafter, evidence was received in the declaratory judgment action consisting mainly of court records in the various actions discussed above.

On April 23, 1970, Judge Battisti granted a motion for summary judgment in Judge Chandler's favor, and entered an order declaring that Judge Chandler was judicially immune from liability for the acts complained of in the State libel action, enjoining O'Bryan from any further litigation "involving the matters dealt with in the controversy before the United States Court of Appeals for the Tenth Circuit entitled O'Bryan v. Chandler, 352 F.2d 987 (1965) and matters in relation thereto," ordering the State court to expunge the libel judgment from its records and enjoining the State court from proceeding further and entertaining any further proceedings relating to the above matters. It is from this action that this appeal is taken.

## II. THE LAW

### A. *Summary of the Parties' Contentions.*

In order to facilitate understanding of the issues in this appeal, a brief summary of the parties' contentions is in order. It must be kept in mind that the second removal of the State libel action and the motion to remand in that case are still pending in the federal district court and have not yet been acted on. This appeal pertains only to the declaratory judgment holding Judge Chandler's actions in releasing the "tan brief" of his "Official Statement" to the newspaper to be judicially immune

and enjoining enforcement of the State court judgment and any further litigation relating to this subject matter.

Appellant O'Bryan contends that this judgment is nothing more than a disguised review of Judge Austin's remand order, which is prohibited by 28 U.S.C. § 1447(d),[5] as well as a review of the propriety of the State court judgment, which of course is not within the jurisdiction of a federal district court. In addition, he contends that the injunction violated the provisions of 28 U.S.C. § 2283.[6]

Judge Chandler, on the other hand, contends that the judgment had no relationship to the prior remand order, in that there was an independent jurisdictional basis for the suit and the pendency of the libel suit in the State court did not defeat this jurisdiction. While the arguments in favor of this independent jurisdiction are not entirely clear, apparently three separate grounds are asserted: (1) that the judgment was necessary to protect and effectuate the Tenth Circuit judgment in O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965); (2) to establish his federal right of judicial immunity; or (3) to protect him as a federal judge from harassing and vexatious litigation. We may note that this last ground is considerably broader, at least in its factual basis, than the first two; and while it was urged at the trial level, it does not appear to have been relied on by the court in rendering its judgment. While we will give it independent consideration later in this opinion, in our initial analysis of the case, we will take into consideration only those issues raised by the trial court in its published opinion.

We turn now to a comparison of the issues raised in the declaratory judg-

---

5. 28 U.S.C. § 1447(d) provides in pertinent part as follows:

"An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ＊ ＊ ＊."

The exception of § 1443 pertaining to civil rights actions is not here material.

6. 28 U.S.C. § 2283 provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

ment action with those raised before Judge Austin in the first removal hearing and in the State libel action.

### B. Comparison of Issues in Removal Hearing, State Libel Action, and Declaratory Judgement Action

The trial court in its published opinion made the following findings which we believe to be relevant to the issues on this appeal:

"(1) Following the dismissal of O'Bryan's complaint in the United States District Court in O'Bryan v. Chandler, D.C., 249 F.Supp. 51, O'Bryan appealed to the Court of Appeals for the Tenth Circuit.

\* \* \* \* \* \*

"(3) While the appeal was pending, on August 18, 1965, Judge Chandler, with leave of the Court of Appeals, filed a brief or statement in the action. The brief or statement was entitled 'Official Statement of Judge Chandler.'

"(4) O'Bryan moved to strike the Official Statement on the grounds that it was not in the nature of a brief. On September 16, 1965, the Court of Appeals entered an order denying the motion to strike. The document was, accordingly, entered into the record of the judicial proceedings before the Court of Appeals.

"(5) The document in controversy is a supposed draft of the 'Official Statement of Judge Chandler' which he made available to a Mr. Clabes, Editor of an Oklahoma newspaper, on August 15, 1965. \* \* \*

\* \* \* \* \* \*

"(7) The conduct of Judge Chandler and Mr. Clabes on August 15, 1965, was solely and directly related to the preparation and filing by Judge Chandler of his Official Statement." 311 F.Supp. at 1125.

Having made the above findings, the trial court then stated the issue before it as follows:

"The issue is whether the conduct of Judge Chandler was so connected to his defense of the litigation before the Court of Appeals that it was merged with the conduct adjudged by that court to be immune.

"The Court is persuaded to the affirmative." Id. at 1125–1126.

Judge Battisti recognized the problem of whether the declaratory judgment action could be construed as an attempt to review Judge Austin's order of remand in the State libel action. He concluded that Judge Austin had considered a very narrow issue in determining the question of removal jurisdiction, and that the issue in the declaratory judgment action was much broader. He made the distinction as follows:

"In that libel action, Judge Austin examined the document in question with the view to determining whether it, in itself, was an official act protected by judicial immunity. This Court viewed the issue before it to be whether Judge Chandler's actions could be construed as part of his defense before the Court of Appeals— as such, those actions could be said to merge with the final judgment of that court, covering all actions of Judge Chandler regarding the litigation." Id. at 1124.

As we read the Court's explanation, it is suggested that Judge Austin did not consider two factors in the case—(1) the relationship of Judge Chandler's actions in releasing the "tan brief" to the newspaper editor to his filing of the "blue brief" in the Court of Appeals and (2) the effect of the ruling of the Court of Appeals on the "Motion to Strike" the "blue brief." In other words, Judge Austin considered only the "tan brief" on its face, which admittedly was not filed in the appeal. However, we think this an unduly restricted view of Judge Austin's holding. While Judge Austin gave no written opinion on this ruling, a thorough reading of the transcript of the hearing before him reveals that both of these matters were considered and therefore necessarily passed on by

him in his order of remand. The following excerpts are illustrative examples.

As to Judge Chandler's actions in releasing the "tan brief" to the newspaper, the following colloquy occurred between Judge Austin and Mr. Goldbloom, the attorney from the Department of Justice representing Judge Chandler:

"THE COURT: Do you think there would be any difference, Counsel, if rather than having delivered this to the editor as is alleged in the complaint, that this was filed in the Court of Appeals and the editor just happened to be over there and found it himself. Do you think there would be any difference?

"MR. GOLDBLOOM: No, Your Honor.

"THE COURT: You have answered my question, You feel it makes no difference?

"MR. GOLDBLOOM: I feel that what was done was an official statement was prepared and it was filed with the Court of Appeals. The allegations are that these are the identical statements that were in presumably—

"THE COURT: I mean, the manner in which it came to the attention of the editor, in your opinion, makes no difference?

"MR. GOLDBLOOM: No, Your Honor, not in the context of this case.

"THE COURT: All right.

"MR. GOLDBLOOM: Because, they are the same statements that were placed on file, using the plaintiff's argument, they are the same statements which were ultimately placed on file in the official statement in the 10th Circuit.

"THE COURT: Now, you have used a word there that I have been wondering whether you would use the word. You say the same words that were in a document were ultimately filed in the Court of Appeals. You mean, filed subsequent to the delivery of this to the newspaper editor?"

The question of the effect of the Tenth Circuit's denial of the Motion to Strike and its relevance to the subsequent libel suit was also considered by Judge Austin, as the following colloquy illustrates:

"MR. GOLDBLOOM: My statement is that subsequent to the filing of the official statement in the Court of Appeals by the 10th Circuit, the plaintiff or the appellant in the 10th Circuit, [O'Bryan] filed a motion to strike the official statement, which in effect reiterated this allegation that the official statement was not proper, properly a brief, to be filed in the Court of Appeals for the 10th Circuit.

"THE COURT: I fail to see any notation of that in the opinion.

"MR. GOLDBLOOM: That is correct, Your Honor. It is simply a matter of—

"THE COURT: And I am, I now ask you what the relevancy of that is, if true. I mean, are you telling me that the 10th Circuit has passed on this by not mentioning it in their opinion?

"MR. GOLDBLOOM: No, Your Honor, except by inferences, as we will get into, at some later stage of the argument.

\* \* \* \* \* \*

"THE COURT: Was the question before the 10th Circuit, whether it was within the performance of the Judge's duty to deliver something to a newspaper editor? Was that before—

"MR. GOLDBLOOM: No, Your Honor.

"THE COURT: Isn't that sort of the crux of this proceeding?

"MR. GOLDBLOOM: That is the crux of this proceeding.

"THE COURT: I mean, so, it wasn't passed on."

Several other illustrative examples could be given, but only one is necessary to show clearly that Judge Austin explicitly considered and passed on the question of whether the actions complained of in the libel suit were a neces-

sary part of the defense in the prior malicious prosecution suit:

"MR. GOLDBLOOM: What we say, Your Honor, is that the action taken by the defendant in allowing the brief or official statement to be given to the witness [the newspaper editor] was a part of his filing of the official statement in Denver.

"THE COURT: I know that is your position and we solve that by saying I disagree with your position so we know exactly where we stand in regard to this."

We must conclude on the basis of this record that all matters considered and passed upon by Judge Battisti in the declaratory judgment action had previously been considered and passed upon by Judge Austin in the removal hearing in the State libel action. These issues have also been raised and passed upon in the State court libel action, which is still pending. The effect of this conclusion will be considered in later parts of this opinion.

C. *Jurisdictional Grounds for the Declaratory Judgment Action.*

█ Appellant O'Bryan contends, correctly, that the Declaratory Judgment Act, 28 U.S.C. § 2201,[7] is not a jurisdictional statute, but is remedial only; any jurisdiction over the controversy must be found in other statutes conferring jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). He further argues that no independent jurisdiction exists in this case.

Judge Chandler argues, on the other hand, that jurisdiction exists under 28 U.S.C. § 1331[8] by virtue of a federal question. As noted above, there are three separate grounds alleged as the basis of the federal question. We examine each of them.

First of all, it is contended that the judgment is necessary to protect and effectuate the judgment in O'Bryan v. Chandler, 352 F.2d 987 (10th Cir. 1965). This is the ground relied on by the court below, and is one of the specific exceptions to 28 U.S.C. § 2283 which otherwise prohibits the enjoining of state court proceedings. In considering this contention, we must keep in mind the admonition of the Supreme Court that

" * * * the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

Our review of the record in the malicious prosecution litigation, which has been made a part of the record in the present suit, leads us to the conclusion that the issues involved in the instant suit were not raised and litigated in the prior suit, and indeed could not have been. Therefore, they could not have been precluded by the judgment in that suit.

7. 28 U.S.C. § 2201 provides as follows:
 "In a case of actual controversy within its *jurisdiction*, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (emphasis added).

8. 28 U.S.C. § 1331(a) provides as follows:
 "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest or costs, and arises under the Constitution, laws, or treaties of the United States."
 Neither party to this appeal has suggested that there is any problem with the jurisdictional amount. Presumably the protection afforded Judge Chandler against enforcement of the $50,000 state libel judgment satisfies this requirement.

Briefly stated, the issues involved in the instant suit which could not have been decided in the prior suit are as follows: (1) Was the "tan brief" the same document as the "blue brief" which was filed in the malicious prosecution suit? This question could not have been passed upon for the reason that the existence of the "tan brief" was unknown to the Tenth Circuit either at the time it ruled on the Motion to Strike or rendered its final decision. (2) Was the delivery of the "tan brief" to the newspaper editor prior to the filing of the "blue brief" an act in defense of the malicious prosecution suit? This question could also not have been passed upon for the same reason that the conduct was unknown at the time the decision was rendered. (3) Assuming that the act of delivering the "tan brief" to the newspaper editor was an act in defense of the malicious prosecution suit, was it clothed with judicial immunity? Obviously this question could not have been passed upon for the same reasons.

■ This statement of the issues makes evident the conclusion that the cause of action in the present libel suit is separate and distinct from the cause of action in the malicious prosecution suit. There the alleged cause of action arose out of Judge Chandler's conduct in relation to the grand jury proceedings which resulted in the indictment of O'Bryan. Here the libel action arises out of Judge Chandler's conduct in delivering allegedly libelous statements to a newspaper editor, conduct which occurred four years later. The judgment in that case could not possibly have covered the issues in the instant case, and therefore the declaratory judgment action cannot be justified as necessary to protect and effectuate the prior federal judgment.

■ The second argument made in support of federal jurisdiction is that the question of Judge Chandler's immunity from the libel suit is a federal question, thus conveying jurisdiction under § 1331. It is true that the immunity issue is a federal question, Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), but it is in the nature of a federal defense to a suit instituted under state law. As such, it is not sufficient to convey *original* jurisdiction on a federal court.

■ It is an established principle that federal jurisdiction based on a federal question must appear from a plaintiff's "well-pleaded complaint" and that anticipation in the complaint of a federal defense, where the plaintiff's basic cause of action is grounded only on·state law, will not suffice to establish original federal jurisdiction. 1 Barron & Holtzoff, Federal Practice and Procedure § 25, pp. 124–126 (Wright ed. 1960), and cases therein cited. Thus, it is clear that the federal court would not have had original jurisdiction over O'Bryan's libel suit, which of course was based solely on state libel laws. Martin v. Wyzanski, 262 F. Supp. 925 (D.Mass.1967); Keppleman v. Upston, 84 F.Supp. 478 (N.D.Cal.1949); Pendleton v. Bussey, 30 F.Supp. 211 (W.D.Va.1939).

The question here, however, is slightly different, in that the declaratory-plaintiff Chandler seeks to have established his federal right of judicial immunity. However, we think this position is foreclosed by the Supreme Court's decision in Public Service Commission v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Court's language there is directly in point in the instant case:

> "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, *it is the character of the threatened action, and not of the defense*, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, *if that right is in reality in the nature of a defense to a threatened cause of*

*action.* Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." 344 U.S. at 248, 73 S.Ct. at 242 (emphasis added).

*See also,* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876 (1950); First Federal S. & L. Assoc. v. McReynolds, 297 F.Supp. 1159 (W.D. Ky.1969); Government Employees Ins. Co. v. LeBleu, 272 F.Supp. 421 (E.D.La. 1967).

■ This principle has direct applicability to the present case. O'Bryan's cause of action is solely based on state libel laws, and in no way raises a federal question in and of itself. Judge Chandler's assertion of judicial immunity is "in reality in the nature of a defense" to that suit. Therefore, it does not confer original federal question jurisdiction in the declaratory judgment action. The application of this principle is particularly apposite in the present case where the state court action is not merely threatened, but has actually been instituted and carried to judgment. The effect of the declaratory judgment here was to "seize litigations from state courts," a purpose not within the declaratory judgment act. Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); Shell Oil Co. v. Frusetta, 290 F.2d 689 (9th Cir. 1961).

■ The final basis urged for federal jurisdiction is that the action is in the nature of a "bill of peace" to protect Judge Chandler from harassing and vexatious lawsuits which have prevented him from performing his functions as a federal judge. This appears to be a rather unique contention, and no authority is cited to support it. We do not feel it can be sustained in the circumstances of this case, for several reasons.

In the first place, we have some doubt that a federal judge has standing as a plaintiff, either in his private or official capacity, to bring a suit enjoining others from litigating against him, at least where the underlying merits of the suit have not yet been determined in his favor. There is no doubt of course that a federal court has the power to enjoin harassing and vexatious litigation in the appropriate circumstances. *See, e. g.,* Meredith v. John Deere Plow Co., 261 F.2d 121 (8th Cir. 1958), *cert. denied,* 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574 (1959); 600 California Corp. v. Harjean, 284 F.Supp. 843 (N.D.Tex.1968); Rudnicki v. McCormack, 210 F.Supp. 905 (D.R.I.1962), *app. dismissed,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963). But these circumstances ordinarily arise only when the parties are otherwise properly before the court on an underlying cause of action within the court's jurisdiction, and that cause of action has been determined in favor of the party seeking the injunction. Pacific Mutual Life Ins. Co. v. Parker, 71 F.2d 872, 876 (4th Cir. 1934); New York Life Ins. Co. v. Marshall, 23 F.2d 225, 226 (5th Cir.), *cert. denied,* 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928); 43 C.J.S. Injunctions § 38(i). In the present suit, however, there is no underlying cause of action within the court's jurisdiction, and there has been no determination in Judge Chandler's favor on the merits of the libel suit.

Assuming however that there is standing to seek the injunction we do not think that the irreparable injury necessary to support its issuance has been shown. Judge Chandler alleges that O'Bryan's suits have prevented him from performing his duties as a federal judge. Apart from its repeated assertion, there is no showing in the record that these suits have interfered with his judicial functioning. In considering this issue, we must disregard the litigation relating to the disbarment proceedings, for these various attempts by O'Bryan to obtain reinstatement involved no personal interest or liability on the part of Judge Chandler. Regardless of the merits of O'Bryan's complaints as to his disbar-

ment, as to which we of course express no opinion, it is at least understandable that he would attempt to get it set aside. Judge Chandler's official functioning could not be interfered with by these attempts, other than perhaps ultimately to have his ruling reversed. But judge's rulings, at both the trial and appellate levels, are frequently reversed and this is but one of the hazards of the judicial occupation.

As to the personal suits against Judge Chandler, it would not appear that they are of the type which should be enjoined by a "bill of peace."

> "To entitle plaintiff to maintain its suit in the nature of a bill of peace, there must be involved an identity of issues. The actions, the multiplicity of which plaintiff seeks to enjoin, must all be based upon the same questions of law so that the decision of one will be practically determinative of all." New York Life Ins. Co. v. Stoner, 92 F.2d 845, 848 (8th Cir. 1937).

As was demonstrated above, there is no identity of issues between the malicious prosecution suit and the presently pending libel action.

Thus we conclude that there was no federal jurisdiction of the declaratory judgment action, and the judgment would have to be reversed on those grounds alone. However, even assuming that sufficient jurisdiction had been shown, we think the order must be reversed for the reason that it was an improper interference with the State court's jurisdiction.

*D. Interference of the Declaratory Judgment with State Court Jurisdiction of the Libel Suit.*

 Under the provisions of 28 U.S.C. § 1447(d) an order remanding a removed case to a state court is not reviewable. This provision establishes the Congressional policy of "not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." United States v. Rice, 327 U.S. 742, 751, 66 S.Ct. 835, 839, 90

L.Ed. 982 (1946). This policy cannot be avoided by invoking the provisions of the declaratory judgment act in a case which has been remanded to a state court. H. J. Heinz Co. v. Owens, 189 F.2d 505 (9th Cir. 1951), *cert. denied,* 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1942). Thus, *so far as the question of a forum* in which a cause is to be litigated is concerned, the determination of a federal district court that a case is not removable and remanding it to a state court is final. Missouri Pac. Ry. Co. v. Fitzgerald, 160 U.S. 556, 583, 16 S.Ct. 389, 40 L.Ed. 536 (1896).

 Therefore, since Judge Austin considered all the questions raised in the court below in his hearing of the removal of the libel suit, and since he determined that the case should be remanded for trial in the State court, that decision is *res judicata* as to any further attempts to litigate the same issues in a federal court. In saying that Judge Austin's decision is *res judicata,* we mean only that it is determinative of the issue of the forum. It is of course not finally determinative of the merits of the federal defense; but that defense must be litigated in the state courts, and thence through the appropriate appellate channels, ultimately to the Supreme Court if necessary. As noted by the Supreme Court in the *Missouri Pacific Railway* case, *supra,* the policy of finality in remand orders is equally applicable in federal question cases:

> " * * * [A]s to applications for removal on the ground that the cause arose under the constitution, laws or treaties of the United States, * * * this finality was equally expedient as questions of the latter character if decided against the claimant would be open to revision under section 709, [writ of error to the Supreme Court] *irrespective of the ruling of the circuit court in that regard in the matter of removal.*
>
> "It must be remembered that when Federal questions arise in causes pending in the state courts, those courts are perfectly competent to decide them,

and it is their duty to do so." 160 U.S. at 583, 16 S.Ct. at 396 (emphasis added).

Judge Chandler argues that, despite Judge Austin's remand order, the State court had no jurisdiction of the suit. We cannot agree with this contention. The State court is not ousted of jurisdiction merely because Judge Chandler's defense is a federal question. The state court has not only the right, but the duty to entertain that question. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Nor does the fact that Judge Chandler has a right of removal divest the State court of jurisdiction, once that question has been determined against him and the case has been remanded to the State court. United States v. Rice, 327 U.S. 742, 749, 66 S.Ct. 835, 90 L.Ed. 982 (1946); Metropolitan Casualty Co. v. Stevens, 312 U.S. 563, 61 S.Ct. 715, 85 L.Ed. 1044 (1941); Missouri Pac. Ry. Co. v. Fitzgerald, *supra*.

It follows from what we have said that, since the State court had jurisdiction of the libel suit, and since Judge Austin's order of remand is *res judicata* as to any further litigation of this subject matter in the federal court, and since the instant suit does not fall within any of the exceptions to 28 U.S.C. § 2283, the injunction against further proceedings in the state libel suit was improper. Mere apprehension that the state court will not adequately protect a federal right is not a sufficient basis for the issuance of the injunction.

" * * * [D]uring more than half of our history Congress, in establishing the jurisdiction of the lower federal courts, in the main relied on the adequacy of the state judicial systems to enforce federal rights, subject to review by this Court. With limited exceptions, it was not until 1875 that the lower federal courts were given general jurisdiction over federal questions. During that entire period, the vindication of federal rights depended upon the procedure which petitioner attacks as so grossly inadequate that it could not have been contemplated by Congress. The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts." Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 518, 75 S.Ct. 452, 456, 99 L.Ed. 600 (1955) (footnote omitted).

Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739 (1970). And where an injunction is improper under § 2283, declaratory relief should not be given. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Appellant O'Bryan, in addition to urging reversal of the judgment in the declaratory judgment action, requests us to enter an order requiring remand of the second removal of the libel suit to the State court. Since this matter is still pending in the trial court and has not been finally acted upon, we do not feel that we have jurisdiction to grant this relief. We assume that any further action taken in this matter will be in conformity with the views expressed in this opinion.

In summary, we recognize this time-consuming, energy-absorbing and costly litigation has been abrasive to both parties and without expressing any opinion on the merits, we feel that Judge Chandler's defense can only, in view of Judge Austin's decision in the first removal proceeding, be presented in the State court with a right of review in the Oklahoma Supreme Court and thence, if desired, presented via certiorari to the United States Supreme Court.[9] The decision on the merits, including, inter alia,

9. As noted by the Supreme Court in Public Service Commission v. Wycoff, *supra*, "State courts are bound equally with the federal courts by the Federal Constitution and laws. Ultimate recourse may be had to this Court by certiorari if a state court has allegedly denied a federal right." 344 U.S. at 247–248, 73 S.Ct. at 242.

 

the related issue of judicial immunity is not for our determination. We lack jurisdiction over the subject matter.

The judgment appealed from must be reversed and remanded with directions to dissolve the injunction and dismiss the complaint.