**W. H. Pat O'BRYAN, Plaintiff,**

v.

**Stephen S. CHANDLER, Defendant.**

**No. C 67–88.**

United States District Court,
W. D. Oklahoma.

April 2, 1973.

See also, D.C., 356 F.Supp. 714.

Reagan M. Martin, and Harvey L. Davis, Dallas, Tex., for plaintiff.

Carl L. Shipley and Irwin Goldbloom, Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge:

The defendant has moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. There seems to be no dispute as to the facts presented by this Complaint. The bulk of these facts may be found in the decision of the Court of Appeals in Chandler v. O'Bryan, 445 F.2d 1045, 1047–1050 (10th Cir. 1971). The Court has carefully reviewed the record before this Court in No. 67–88 and No. 68–26 as well as information in Civil Action No. 66–8, and of Case No. 170–187 in the Oklahoma State Court. The issue presented by the motion is whether Judge Chandler is judicially immune from the instant civil libel suit.

On August 15, 1965, Judge Chandler requested that Mr. John Clabes, an editor of the Oklahoma Journal, come to his office for the purpose of asking him to rewrite a brief he intended to file in the Court of Appeals in the malicious prosecution case. Mr. Clabes did not know why Judge Chandler wanted to see him. Mr. Clabes came to Judge Chandler's office on the appointment Sunday, where Judge Chandler showed him a copy of the yellow (or tan) brief. He gave Clabes a copy of this brief. Mr. Clabes told Judge Chandler that he wanted a copy of the revised (blue) brief as soon as it was sent to the Tenth Circuit Clerk's office. Judge Chandler sent a copy of the blue brief to the Oklahoman, The Times, and the Oklahoma Journal. Mr. Clabes knew he was not to publish and did not publish the yellow brief. He could, of course, publish an article based on the blue brief after it was on file in the Clerk's office in Denver.

Mr. Clabes has admitted in the state court trial that he wrote the now famous story in the Oklahoma Journal on August 19, 1965, with the exception of a few paragraphs written by an employee. Mr. Clabes compared the yellow brief and the blue brief. They were largely identical. In the blue brief the words "additional concrete facts" were included, while eliminated from the yellow brief, and that the words "in the bribery" were not in the blue brief. Both briefs include the words "which disclosed beyond any reasonable doubt that O'Bryan was an

accomplice, if not the mastermind" (in the selected bribery of the court). The bracketed words appeared in the newspaper article, but in neither brief. He testified in the state court trial that he wrote the article from the blue brief and by reading it in its entirety; he acknowledged the allegation in the headline appeared nowhere in the brief and was taken out of context from the newspaper article.

It is, therefore, clear that Judge Chandler filed a brief in the Court of Appeals, that the words in controversy in the tan and blue brief are identical, and that the yellow and blue "statements" are substantially identical in their entireties. However, before reaching the question of judicial immunity, the opinion of the Court of Appeals in Chandler v. O'Bryan, *supra,* must be examined. The Court of Appeals filed a lengthy opinion, but the holding is quite simple. The Court of Appeals held that the District Court had no jurisdiction over the declaratory judgment action. 445 F.2d at 1057.

An assumption underlying a portion of the precatory language of the appellate decision is its discussion concerning the proper relationship between state and federal courts. The fact that any and all controversies may be decided by a state court rather than a federal court has been axiomatic since 1787. See generally, Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts; An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953). The relationship of that given fact to the instant situation is remote at best. Federal judges hear cases and controversies. Cases are brought by litigants and their counsel. They, the litigants and their counsel, choose what they believe to be the proper forum. Assuming that federal jurisdiction is properly asserted, a federal judge must hear and decide the case. This he must do regardless of his own preference concerning the matter presented. Above all he must not violate his constitutional oath. This case was, in my view, properly removed to this fed-

eral court. It is now the duty of a federal judge, pursuant to the constitution and laws of the United States to hear and decide this case and controversy. He is not at liberty to decline jurisdiction because it might be more "appropriate" for the matter to be handled by a state court. Paradoxically, should a judge accept jurisdiction in a case which falls within the gray area of that category of cases which has caused some tension between state and federal courts, reversals may ensue. The matter of state-federal relations is sensitive in the best of times. Avoidance of federal responsibility is no more a panacea than an elevation of state responsibility and obligation. Federal and state systems have long been entwined. As Professor Wechsler has wisely noted, "Federal law is generally interstitial in its nature. It rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states." Bator et al., The Federal Courts and the Federal System, 2d Ed. 470 (1973). See generally, Hart, The Relations Between State and Federal Law, 54 Col.L.Rev. 489 (1954). Such cooperative federalism is the heart of our Constitution. Both systems must be strong, healthy, responsible to its authority and cognizant of its inherent limitations. In this light, it is respectfully noted that a federal judge should never be encouraged, or ordered to decline properly invoked jurisdiction over any case simply because another forum is available.

The issue before this Court is not whether Judge Chandler's statement was defamatory; rather, the issue is whether Judge Chandler's conduct was judicially immune. The law has long been settled that judges are exempt from acts done by them in the exercise of their judicial function. The first case found in the United States Reports on this subject is Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646 (1872) where Mr. Justice Field, speaking for the Court said:

"Judges of courts of superior or general jurisdiction are not liable to civil

actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. * * * But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him. * * * "

On page 354, 20 L.Ed. 646, the Court continued:

"The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts, existing when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done.

The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into, judges would be subjected to the same vexatious litigations upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must in such cases resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed."

■■ A judge, therefore, is exempt from civil liability regardless of his motivation. Additionally, only when there is a clear absence of jurisdiction may a judge be held civilly liable, and not when he acts in excess of his jurisdiction. The problem which faced Judge Harper in O'Bryan v. Chandler, 249 F.Supp. 51 (W.D.Okl.1964) faces this Court. The Court is confronted with two conflicting policies. In one hand "the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government" must be considered. On the other hand is "the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." Barr v. Matteo, 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959). In its opinion, the Supreme Court in *Barr* relied on Bradley v. Fisher, *supra*, as well as on a long passage from Gregoire v. Biddle, 177 F.2d 579, 581, (2 Cir.) (opinion of L. Hand, J.) as follows:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon

others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * * "

While certain judges in the past have been held to be civilly liable in extreme cases (See Manning v. Ketcham, 58 F.2d 948 (6th Cir. 1932)), the rule of Bradley v. Fisher, *supra*, is still viable. Therefore, the test to be applied here is whether there is a clear absence of all jurisdiction. If so, the judge may be held civilly liable, otherwise he may not.

Judge Chandler was sued in his capacity as a federal judge for malicious prosecution. He was held to be judicially immune. He acted in defense of his immunity in the Court of Appeals which affirmed that immunity. 352 F. 2d 987 (10th Cir. 1965). The documents in question are substantially identical and many pages are completely congruent. To disavow Judge Chandler's immunity would violate the spirit and thrust of the opinion of Judge Harper and the affirmance of his judicial immunity in that case. Since this case is substantially different from Judge Austin's warranting a second removal, and since the Court of Appeals did not rule on this issue, these opinions cannot be read as being in conflict with a finding of Judge Chandler's judicial immunity.

Accordingly, it is hereby ordered that acts complained of in the cause and in Case No. 170–787 in the District Court of Oklahoma County are judicially immune. The defendant's motion for summary judgment is granted.

It is so ordered.