635 F.2d 797
 Richard MADSEN and Nancy Madsen, his wife, for themselves
and all others similarly situated, Plaintiffs-Appellants,
v.
PRUDENTIAL FEDERAL SAVINGS & LOAN ASSOCIATION, for itself
and all others similarly situated, Defendant-Appellee,
Utah Bankers Association, Intervenor-Appellee.
Richard MADSEN and Nancy Madsen, for themselves and all
others similarly situated, Petitioners,
v.
Honorable Aldon J. ANDERSON, Judge of the United States
District Court for the District of Utah, Central
Division, Respondent.
 Nos. 79-1362, 79-1535.
 United States Court of Appeals,
Tenth Circuit.
 Argued May 6, 1980.
Decided Dec. 3, 1980.
Rehearing Denied Jan. 23, 1981.
 
 Robert J. DeBry, Salt Lake City, Utah, for plaintiffs-appellants.
 Joseph J. Palmer, Salt Lake City, Utah (Reid E. Lewis, Salt Lake City, Utah, with him on the brief) of Moyle & Draper, Salt Lake City, Utah, for defendant-appellee.
 Peter W. Billings, of Fabian & Clendenin, Salt Lake City, Utah, for intervenor-appellee.
 Milan C. Miskovsky, Gen. Counsel, Harvey Simon, Acting Associate Gen. Counsel, Michael L. Seablot, Trial Atty., of Federal Home Loan Bank Board, Washington, D. C., on the brief for amicus curiae Federal Home Loan Bank Board.
 Before LOGAN, PECK* and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 The Madsens, plaintiffs-appellants, borrowed money from Prudential Federal Savings & Loan Association (Prudential) to purchase a home in 1964. Pursuant to this loan, the Madsens signed a trust deed[1] requiring them to make "budget payments" of one-twelfth of the annual estimated taxes and insurance along with their monthly payments of principal and interest. Under the agreement, these budget payments were pledged as additional security for repayment of the loan. The funds were accumulated in a reserve account and used annually for the payment of taxes and insurance.
 
 
 2
 On March 3, 1975, the Madsens[2] filed a class action[3] in Utah state court seeking to recover interest realized from Prudential's use of the escrowed funds, based on claims of breach of contract and unjust enrichment. The state trial court granted Prudential's motion for summary judgment. In January 1977, the Utah Supreme Court reversed the summary judgment and remanded for further proceedings. It held that the trust deed contained the essential elements of a pledge, and that under Utah common law a pledgee must account to the pledgor for profits resulting from the use of the pledged property. In October 1977, the Madsens amended their complaint to ask for an accounting and recovery of the profits earned by Prudential on the escrowed amounts. This amended complaint added a defendant class of lenders with similar escrow arrangements.
 
 
 3
 Meanwhile in April 1977, Prudential filed a separate action for declaratory relief in federal court, asserting that under 12 C.F.R. § 545.6-11(c)[4] (hereinafter referred to as section 545.6-11(c)), it is not required to pay interest or account to the Madsens on the escrowed funds. The complaint based jurisdiction on 28 U.S.C. § 1337[5] and sought a declaration of the rights and obligations of the parties to the trust deed. When the Madsens amended their state complaint, Prudential promptly filed a removal petition, alleging that the relief requested arises under and is controlled by federal law. The Utah Bankers Association, a trade association of commercial banks domiciled in Utah, intervened in the action, and the Federal Home Loan Bank Board filed an amicus curiae brief. The federal court denied the Madsens' motion to remand the case, consolidated the removed action and the declaratory judgment suit, and granted summary judgment in favor of Prudential.
 
 
 4
 On appeal, the Madsens contend, inter alia, that the federal court lacks jurisdiction over either the removed case or the declaratory judgment action. We agree, and reverse with directions to remand the removed action to state court and to dismiss the declaratory action.
 
 I.
 Removal Jurisdiction
 
 5
 Prudential sought removal pursuant to 28 U.S.C. § 1441(b), which provides in pertinent part:
 
 
 6
 "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."
 
 
 7
 Jurisdiction was claimed under 28 U.S.C. § 1331[6] and section 1337 because the cause of action allegedly arose under the laws of the United States and Acts of Congress regulating commerce.
 
 
 8
 The Madsens contend their claim in state court is founded upon contract rights and obligations created by state law. They assert that Prudential retains the Madsens' budget payments for up to a year before using the funds to pay the taxes and insurance, that Prudential invests the funds in the interim and receives a profit, and that the Madsens are entitled to be paid the profits earned on the pledged funds. The Madsens point out that no federal law or regulation was invoked, relied on, attacked, or cited in their complaint. Consequently, they say, their claim did not arise under federal law.
 
 
 9
 Prudential and Intervenor argue, on the other hand, that the trust agreement between Prudential and the Madsens contains no express language requiring the payment of interest on the escrowed funds, and that the federal regulation does not contemplate interest payments under such circumstances. They say that interpretation of the agreement arises under federal law because Prudential is a regulated federal savings and loan association and Congress has preempted the area.
 
 
 10
 The conditions under which a suit may be said to "arise under" the laws of the United States were definitively set out in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). There the Court stated that the required federal right or immunity must be an essential element of the plaintiff's cause of action, and that the federal controversy must be "disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Id. at 113, 57 S.Ct. at 98. It is beyond argument that a defense predicated upon federal law is not enough by itself to confer federal jurisdiction, even though the defense is certain to arise. Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961); Seneca Nursing Home v. Kansas State Board of Social Welfare, 490 F.2d 1324, 1328 (10th Cir. 1974), cert. denied, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974); Warner Bros. Records, Inc. v. R. A. Ridges Distributing Co., 475 F.2d 262 (10th Cir. 1973).
 
 
 11
 In Mountain Fuel Supply Co. v. Johnson, 586 F.2d 1375, 1381 (10th Cir. 1978), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979), we described the test for determining whether a complaint asserts, on its face, a substantial federal question:
 
 
 12
 "A case 'arises' under the laws of the United States if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determinative of the resulting judgment. Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). Thus, if the action is not expressly authorized by federal law, does not require the construction of a federal statute and/or regulation and is not required by some distinctive policy of a federal statute to be determined by application of federal legal principles, it does not arise under the laws of the United States for federal question jurisdiction. Lindy v. Lynn, 501 F.2d 1367 (3rd Cir. 1974)."
 
 
 13
 No argument has been made on appeal that the Madsens' claim is expressly authorized by federal law. Consequently, federal removal jurisdiction is established in this case only if the Madsens' claim requires the construction of a federal regulation or the application of federal law.
 
 
 14
 The federal trial court based its finding of jurisdiction on North Davis Bank v. First National Bank, 457 F.2d 820 (10th Cir. 1972). We find that case distinguishable. There the central issue in the complaint was whether the defendant's facility constituted a branch of a national bank. We noted that the Supreme Court in First National Bank v. Dickinson, 396 U.S. 122, 133, 90 S.Ct. 337, 343, 24 L.Ed.2d 312 (1969), held this determination to be a "threshold question of federal law." 457 F.2d at 822. Therefore we held: "(t)his is not a case in which a federal statute is indirectly or collaterally involved but it is one having its source in and arising under (the McFadden Act) 12 U.S.C. § 36(f)." Id. at 823.
 
 
 15
 Here the basic issue in the Madsens' complaint is whether the contract between the Madsens and Prudential requires the payment of profits or interest on escrowed funds. Although construction of the federal regulation cited by Prudential may be relevant to the defense Prudential asserts, i. e., that section 545.6-11(c) does not require payment of interest, the meaning of the regulation is absolutely irrelevant to the Madsens' theory of recovery. Because the Madsens have predicated their suit upon rights created under state law, the fact that federal regulations may create a defense to recovery on such a claim is immaterial to a finding of federal question jurisdiction. See Phillips Petroleum Co. v. Texaco, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); Pan American Petroleum, 366 U.S. at 662-64, 81 S.Ct. at 1307-1308.
 
 
 16
 Prudential and Intervenor contend that removal jurisdiction exists because federal law has preempted state law in the area of federal savings and loan regulation. The amicus curiae brief supports the argument that the field of regulatory control over federal associations has been preempted. However, even if federal preemption were established, it would not confer jurisdiction when it is raised by the defendant to defeat a common-law contract claim brought in state court. See Pan American Petroleum, 366 U.S. at 662-65, 81 S.Ct. at 1307-1309; Washington v. American League of Professional Baseball Clubs, 460 F.2d 654, 660 (9th Cir. 1972), and cases cited therein. In Home Federal Savings & Loan Association v. Insurance Department, 571 F.2d 423 (8th Cir. 1978), the court dismissed the case for lack of subject matter jurisdiction despite a federal preemption argument:"(T)he Commissioner's proceeding against Home Federal was based solely upon alleged violations of Iowa's insurance law and raised no federal question. Home Federal's allegations of preemption and failure to engage in the 'business of insurance,' asserted in its federal petition, actually are in the nature of defenses to the Commissioner's charges. Hence they will not suffice for federal question jurisdiction here. The case is basically simply an alleged violation of state law. It is not a federal case and is not converted to one by Home Federal's defenses to the state's basic allegations."
 
 
 17
 Id. at 427. Prudential's claim of federal preemption is in the nature of a defense to the Madsens' cause of action and cannot be the basis of federal question jurisdiction on removal.
 
 
 18
 It is also argued that the Madsens' claim arises under the laws of the United States because the contract must be interpreted under federal common law rather than state law. This is so, Prudential urges, because the regulation addressing the payment of interest by federal savings and loan associations, section 545.6-11(c), states that "(e)xcept as provided by contract, a Federal Association shall have no obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph." (Emphasis added). Prudential contends that the circumstances constituting a "contract" within the meaning of the federal regulation is a federal question.
 
 
 19
 It is true that the application of federal common law to a plaintiff's cause of action is sufficient to invoke federal jurisdiction and thus support removal. See Illinois v. Milwaukee, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). However, federal common law is not automatically applied to resolve all disputes in a field subject to pervasive federal regulation. "In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown." Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). Here, it is vigorously argued that application of state law would create a significant conflict because federal policy requires uniform nationwide standards for the handling of escrow accounts by federal savings and loan associations. This argument founders on the very language of the regulation cited to support it. Section 545.6-11(c) provides that a federal savings and loan association shall pay interest on escrow accounts if a state statute requires such payments to be made by state-chartered institutions, or if payments are required by contract. The regulation expressly anticipates that the obligation of a federal institution to pay interest on escrow accounts not only will vary from state to state, but from contract to contract. See Johnson v. First Federal Savings & Loan Association, 418 F.Supp. 1106, 1109 (E.D.Mich.1976). Any argument that federal policy requires nationwide uniformity with regard to this issue is untenable.[7] See United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966).
 
 
 20
 Contractual obligations are created by state law. See Gully, 299 U.S. at 114-15, 57 S.Ct. at 98-99. See also Pan American Petroleum v. Superior Court, 366 U.S. at 662-663, 81 S.Ct. at 1307-1308. "The interpretation and enforcement of contracts is (sic ) traditionally within the province of state courts," Mariniello v. Shell Oil Co., 511 F.2d 853, 858 (3d Cir. 1975), and the general presumption is in favor of applying state law. Note: Federal Common Law, 82 Harv.L.Rev. 1512 (1969). Given the absence of a significant conflict between the federal policy expressed in section 545.6-11(c) and the use of state law, we hold that state law is applicable in determining whether Prudential contracted to pay interest on the Madsens' escrow account.
 
 
 21
 Since no federal controversy was disclosed on the face of the Madsens' state court complaint, as amended, removal was improper and the consolidated case must be remanded to state court.
 
 II.
 Declaratory Judgment Jurisdiction
 
 22
 The question remains whether the federal court has subject matter jurisdiction over Prudential's declaratory judgment action. The federal complaint alleges that Prudential is a federal savings and loan association regulated by the Federal Home Loan Bank Board, that it makes residential real estate loans insured and guaranteed by federal agencies, and that it is not permitted to pay interest or to otherwise account for profits realized on escrowed funds paid by mortgagors "except as provided by applicable federal regulations." App., vol. II, at 180. It points out that the Madsens have filed a class action in state court seeking interest on the escrowed funds under the contractual arrangements between Prudential and its borrowers, that "(a) proper resolution of said controversy requires a declaration of the respective rights and obligations of the parties to said contractual arrangements," id. at 181, and that this determination presents a question under federal laws regulating commerce or under federal common law.[8]
 
 
 23
 As we have noted, the federal regulation that Prudential cites in its complaint provides that interest shall be paid on escrow accounts if a statute in the state where the mortgaged property is located requires similar lending institutions to pay such interest. 12 C.F.R. 545.6-11(c), supra n. 4. The regulation also provides that a federal association has no other obligation to pay such interest "(e)xcept as provided by contract." Id. Consequently, the controversy underlying the federal declaratory judgment action is the same as in state court: whether Prudential is obligated by its contract with the Madsens to pay interest on the escrowed funds.
 
 
 24
 This court has consistently adopted the rationale set out by the Supreme Court in Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 242-243, 97 L.Ed. 291 (1952):
 
 
 25
 "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. (citations omitted)."
 
 
 26
 (Emphasis added). In Monks v. Hetherington, 573 F.2d 1164, 1167 (10th Cir. 1978), we applied the traditional view "that a party cannot by artful pleading anticipate a defense based on federal law and thus bring within federal jurisdiction an action that could not otherwise be heard in federal court." And in Chandler v. O'Bryan, 445 F.2d 1045, 1055-56 (10th Cir. 1971), we noted that this principle is particularly applicable where, as here, the state court action has been instituted and issues have been decided.
 
 
 27
 We held in part I, supra, that the federal preemption argument is defensive in nature. This is true whether the claim is made as the basis of removal or to support federal jurisdiction in a declaratory judgment action. See, e. g., Home Federal Savings & Loan Association v. Insurance Department, 571 F.2d 423 (8th Cir. 1978). This case is not like Conference of Federal Savings & Loan Associations v. Stein, 604 F.2d 1256 (9th Cir. 1979), aff'd mem., 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980), First Federal Savings & Loan Association v. Greenwald, 591 F.2d 417 (1st Cir. 1979), or others cited by Prudential, Intervenor, and amicus curiae, where state regulations directly conflict with federal regulations governing federal associations. No such conflict exists here.
 
 
 28
 The defensive nature of Prudential's claim is expressed throughout its complaint. It alleges that a state action has been brought seeking interest pursuant to the contractual arrangements between the parties, and that any order of the state court requiring Prudential to pay interest or otherwise account to the Madsens would be contrary to the federal regulations. If the Madsens had attempted to bring their action in federal court by anticipating or responding to Prudential's possible federal defense, the case would lack federal jurisdiction. See Phillips Petroleum, 415 U.S. at 128, 94 S.Ct. at 1004; Skelly Oil Co., 339 U.S. 667, at 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194; Home Federal Savings & Loan Association, 571 F.2d at 426-27. It is irrelevant for purposes of jurisdiction that "federal consent is the source of state authority." Gully, 299 U.S. at 116, 57 S.Ct. at 99; Oklahoma ex rel. Wilson v. Blankenship, 447 F.2d 687, 691 (10th Cir.), cert. denied, 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1971).
 
 
 29
 Here as in Gully "(t)he most one can say is that a question of federal law is lurking in the background." 299 U.S. at 117, 57 S.Ct. at 99-100. Accordingly, we hold the court has no jurisdiction over the declaratory judgment complaint and the action must be dismissed.
 
 
 30
 Reversed.
 
 
 
 *
 Of the United States Court of Appeals for the Sixth Circuit sitting by designation
 
 
 [1]
 The trust deed provides in pertinent part:
 "In addition to the monthly payments as provided in said note, the TRUSTOR agrees to pay to the BENEFICIARY, upon the same day each month, budget payments estimated to equal one-twelfth of the annual taxes and insurance premiums; said budget payments to be adjusted from time to time as required, and said budget payments are hereby pledged to the BENEFICIARY as additional security for the full performance of this deed of trust and the note secured hereby. The budget payments so accumulated may be withdrawn by the BENEFICIARY for the payment of taxes or insurance premiums due on the premises. The BENEFICIARY may at any time, without notice, apply said budget payments to the payment of sums due under the terms of this deed of trust and the note secured hereby or either of them. TRUSTOR'S failure to pay said budget payments shall constitute a default under this trust."
 App., vol. I, at 5.
 
 
 [2]
 The original complaint named Richard Madsen only as plaintiff. An amended complaint was filed April 10, 1975, joining his wife Nancy
 
 
 [3]
 Numerous issues regarding the classes named in these proceedings have been raised on appeal. They are not relevant to our disposition of this case and are not addressed in our opinion
 
 
 [4]
 12 C.F.R. § 545.6-11(c) provides:
 "A Federal association which makes a loan on or after June 16, 1975, on the security of a single-family dwelling occupied or to be occupied by the borrower (except such a loan for which a bona fide commitment was made before that date) shall pay interest on any escrow account maintained in connection with such a loan (1) if there is in effect a specific statutory provision or provisions of the State in which such dwelling is located by or under which the State-chartered savings and loan associations, mutual savings banks and similar institutions are generally required to pay interest on such escrow accounts, and (2) at not less than the rate required to be paid by such State-chartered institutions but not to exceed the rate being paid by the Federal association on its regular accounts (as defined by Section 526.1 of this chapter). Except as provided by contract, a Federal association shall have no obligation to pay interest on escrow accounts apart from the duties imposed by this paragraph." (Emphasis added).
 
 
 [5]
 28 U.S.C. § 1337 provides:
 "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
 
 
 [6]
 28 U.S.C. § 1331(a) provides in pertinent part:
 "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."
 We note that the same standards apply to whether the issue "arises under" federal law in both this section and section 1337.
 
 
 [7]
 We note Intervenor's argument that this case arises under federal law because the mortgage form must be approved by the regulatory agency, see 24 C.F.R. § 203.17, and because the mortgage must provide for monthly escrow payments for taxes and insurance, see 24 C.F.R. § 203.23(a). However, these regulations are silent on the issue of interest payments on escrow accounts, and therefore do not conflict with section 545.6-11(c), which allows interest to be required or prohibited by the individual contract terms. Accordingly, we reject the argument that the use of these forms mandates a uniform interpretation under federal law
 
 
 [8]
 We have already concluded in part I, supra, that federal common law is not applicable to interpret the contract between Prudential and the Madsens