**TRAILWAYS, INC., Plaintiff,**

v.

**The STATE CORPORATION COMMISSION OF the STATE OF KANSAS, Defendant.**

**Civ. A. No. 83–1454.**

United States District Court, D. Kansas.

June 3, 1983.

John Jay Rosacker, State Corp. Com'n, Topeka, Kan., for defendant.

Glenn D. Young, Jr., Wichita, Kan., George W. Hanthorn, Dallas, Tex., for plaintiff.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

THEIS, District Judge.

Plaintiff Trailways, Inc. (hereinafter Trailways) has filed this action for declaratory judgment, asking the Court to declare that defendant Kansas Corporation Commission (hereinafter KCC) is without authority to deny plaintiff's schedule changes on bus routes serving Junction City, Wichita, and Fort Scott, Kansas. Plaintiff contends that the Bus Regulatory Reform Act of 1982 has preempted state regulation of schedule changes on intrastate routes, with the exception that states may require carriers to provide notice of said changes. Plaintiff has moved for summary judgment.

Defendant KCC has moved for dismissal on the grounds that the Court is without jurisdiction to entertain this action. Defendant contends that plaintiff's action is merely a federal defense to a pending action by the KCC in state court and that jurisdiction is thus precluded. Defendant also urges that abstention by this court is required.

There is little, if any, factual dispute in this case. The parties have stipulated to the following. Trailways is a motor common carrier of passengers subject to the jurisdiction of the Interstate Commerce Commission (ICC) under Subchapter II of Chapter 105 of Title 49 of the United States Code. Trailways is authorized to conduct and conducts interstate and intrastate operations over regular routes between Wichita, Kansas and Junction City, Kansas and be-

tween Wichita, Kansas and Fort Scott, Kansas.

On December 27, 1982, Trailways filed with the KCC a notice of schedule discontinuation, effective February 5, 1983, to discontinue service between Wichita and Fort Scott and between Wichita and Junction City. On January 13, 1983, the KCC suspended the effective date of the discontinuance until April 26, 1983.

On March 3, 1983, Trailways filed a notice of schedule change, to be effective April 4, 1983, wherein service between Wichita and Fort Scott and between Wichita and Junction City would require a change of bus at El Dorado, Kansas. The involved schedules would operate at different times, but service to all points between Wichita and Fort Scott and between Wichita and Junction City would be maintained. The KCC denied Trailways' proposed schedule change by order dated March 28, 1983.

On April 4, 1983, Trailways modified its Wichita-Fort Scott and Wichita-Junction City service as set forth in its March 3, 1983, notice. On April 18, 1983, the KCC applied for a restraining order, temporary injunction and assessment of penalties against Trailways in an action before the District Court of Greenwood County, Kansas. That action is currently pending. By order dated April 26, 1983, the KCC denied plaintiff's December 27, 1982, request to discontinue service between Wichita and Fort Scott and Wichita and Junction City.

JURISDICTION

Trailways brings this action pursuant to 28 U.S.C. Sec. 2201 (the Declaratory Judgment Act) and jurisdiction is grounded on 28 U.S.C. Sec. 1331(a), the existence of a federal question. Defendant's motion to dismiss is premised on the argument that plaintiff's suit is nothing more than a federal defense to the state court action and that there is no federal jurisdiction. In the Court's view, however, plaintiff's declaratory judgment action raises more than a mere defense to the state court suit and is clearly grounded in federal law. Jurisdiction exists in this court.

Defendant relies on *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). In *Wycoff,* a carrier of motion picture films and newsreels sought a declaratory judgment that it was engaged in interstate commerce and an injunction forbidding the Public Service Commission of Utah from "interfering" with plaintiff's activities on routes authorized by the ICC. Plaintiff at trial offered no evidence of any past, threatened or pending interference with its operations, and its only evidence went to show that it was engaged in interstate commerce. The trial court found that there had been no actual or threatened interference.

The Supreme Court held that there was no danger of irreparable injury and thus no right to injunctive relief. *Wycoff,* 73 S.Ct. at 239. To the Court, it was clear that plaintiff had abandoned the suit for injunctive relief but continued to seek a declaratory judgment. The Court then examined jurisdictional requirements for declaratory judgment actions. The Supreme Court found that the disagreement between the parties was too "nebulous" for jurisdiction to exist, and concluded that the case should be dismissed because the controversy was too abstract, unripe and meaningless except as a possible state court defense. The Court noted:

The complainant in this case does not request an adjudication that it has a right to do, or to have, anything in particular. It does not ask a judgment that the Commission is without power to enter any specific order to take any concrete regulatory step. It seeks simply to establish that, as presently conducted, respondent's carriage of goods between points within as well as without Utah is all interstate commerce. One naturally asks, so what? To that ultimate question no answer is sought.

*Wycoff,* 73 S.Ct. at 240.

After reaching its holding, the Supreme Court added an oft-quoted dictum:

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or

threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

*Wycoff,* 73 S.Ct. at 242.

It is this dictum upon which the KCC relies. While the Supreme Court in this dictum did no more than entertain doubts about the existence of jurisdiction in certain cases, it is true that lower courts have adopted the dictum as a basis for holding that no federal question jurisdiction exists in certain situations. Courts have frequently declined, however, in situations analogous to this case, to give *Wycoff* the broad reading sought by defendant.

In *Braniff International v. Florida Public Service Commission,* 576 F.2d 1100 (5th Cir. 1978), six air carriers filed suit for declaratory and injunctive relief, challenging the constitutionality of a Florida statute regulating the schedules of interstate air carriers as violative of the Supremacy Clause, the Commerce Clause and the Fourteenth Amendment. The District Court labelled the action as merely a federal defense and dismissed the action for lack of federal question jurisdiction.

The Circuit Court noted that the Supreme Court has never invoked the rationale of the *Wycoff* dictum to obtain the result of dismissal for lack of jurisdiction. The Circuit Court focused on the fact that the *Wycoff* "test" was stated in a case in which there was no evidence of any past, present or future action by defendant. In the case at hand, noted the Circuit Court, defendant had begun action against plaintiffs and injunctive relief remained a possibility. In addition, it was clear that a case

or controversy existed, unlike in *Wycoff.* The Circuit Court concluded:

That appellants' constitutional claim is or may be a defense to the Commission's actions states a mere truism; it is not, under the circumstances, a limitation upon the power of the district court to entertain the controversy before it. In summary, we hold that where a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute, and where there are no other concrete impediments to a proper exercise of federal-question jurisdiction, the mere fact that the constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction.

*Braniff International,* 576 F.2d at 1106.

In *Conference of Federal Savings and Loan Associations v. Stein,* 604 F.2d 1256 (9th Cir.1979), *aff'd mem.,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980), plaintiff brought action seeking a declaration that California's Housing Financial Discrimination Act was preempted by federal legislation and regulations. The District Court entered judgment finding preemption and the Circuit Court affirmed.

Defendant argued that preemption is only a federal defense to a potential state claim and cited *Wycoff.* The Circuit Court, however, had no difficulty in distinguishing *Wycoff,* finding that in *Wycoff* there was

[n]o proof of any threatened or probable act by the state commission which might cause the irreparable injury essential to equitable relief or which could serve to create the actual controversy necessary for declaratory judgment jurisdiction. Here, an actual conflict exists created by the conflicting positions taken by appellant and the Bank Board.

*Stein,* 604 F.2d at 1259. The decision of the Circuit was affirmed without opinion by the Supreme Court.

In *Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir.1975), *aff'd sub nom. Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), plaintiff

brought suit to enjoin the enforcement of certain California statutes pertaining to the labelling of foods, and for a declaration that the federal Wholesome Meat Act of 1967 preempted the California statute and attendant regulations. The Circuit Court rejected the defendant's arguments which relied on *Wycoff.* California was enforcing the regulations and this created an actual controversy between the parties. The Court noted that it is a mere truism that plaintiff's claim is the basis for a defense to a state court action and that the test is whether plaintiff has created a federal controversy where none existed or is seeking adjudication of a claim which is meaningful only when pleaded as a defense to a particular pending state court action. The Court found that neither factor was present and concluded that federal jurisdiction existed.

The Supreme Court, in affirming the Ninth Circuit on the merits, did not deem the jurisdictional objections worthy of discussion. *Jones v. Rath Packing Co., supra.*

In *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2nd Cir.1982), plaintiff brought an action for declaratory judgment that a state statute was preempted by the Employee Retirement Income Security Act of 1974. The District Court grant of summary judgment in favor of plaintiff was affirmed by the Circuit Court, which noted that a federal right was asserted by plaintiff and that relief was being sought to prevent interference with that right. The declaratory claim was not merely a defense but affirmative relief was actively sought by plaintiff. The Court noted:

> Plaintiff's claim here is not only one which originates from a federal statute, but is one whose vindication turns on preemption expressly contained in it. Under these circumstances a declaratory plaintiff can come into federal court asserting that preemption affords it insulation from a state-based claim.... Finally, we are satisfied that this case meets the many "arising under" tests for federal jurisdiction, not the least of which is that pragmatic considerations make it eminently logical and sensible that the

forum for such a dispute be the federal district court.

*Simon & Webster,* 690 F.2d at 328.

In *First Federal Savings and Loan Association of Boston v. Greenwald,* 591 F.2d 417 (1st Cir.1979), a federally chartered lending institution sought declaratory judgment relief from state regulation. The Court found that the preemption issue was the focal point of the declaratory judgment suit and thus found that federal question jurisdiction existed. The Court noted that the declaratory judgment action raised more than a mere defense to an action filed in state court against plaintiff by defendant, because: "Both the state and federal regulations are currently in effect, subjecting the association to conflicting requirements ... which would have presented a justiciable controversy even if the declaratory judgment suit had been brought prior to the Commissioner's enforcement action." *Greenwald,* 591 F.2d at 423, n. 8.

A scholarly examination of this issue was undertaken by Chief Judge Holder in *Town of Springfield, Vt. v. McCarren,* 549 F.Supp. 1134 (D.Vt.1982). An action was brought for declaratory judgment that the Federal Energy Regulatory Commission had exclusive jurisdiction over licensing of hydroelectric programs on navigable rivers and that the Vermont Public Service Board's ruling that it had concurrent jurisdiction was void. The Court found that the case was ripe and justiciable and that the federal preemption issue established federal question jurisdiction.

The above review of cases must not be taken as evidence of unanimity in the federal courts. It is clear that many courts have read the *Wycoff* dicta broadly and applied it to a wide variety of situations. The Court in *First Federal Savings and Loan Association v. Anderson,* 681 F.2d 528 (8th Cir.1982), held that the actions filed by federally chartered savings associations seeking declaratory judgment that state laws were preempted lacked federal question jurisdiction. The Sixth Circuit reached an identical conclusion under similar facts.

*Michigan Savings and Loan League v. Francis,* 683 F.2d 957 (6th Cir.1982).

In *United Air Lines v. Division of Industrial Safety,* 633 F.2d 814 (9th Cir.1980); cert. denied, 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981) the Ninth Circuit again considered preemption issues and jurisdiction. Safety inspections conducted by defendant, also known as Cal/OSHA, resulted in a number of citations against plaintiff. United contested the citations, arguing that Cal/OSHA lacked jurisdiction because of preemption by the Federal Aviation Act. While litigation was pending in state agencies and courts, United filed a complaint in federal court, seeking declaratory and injunctive relief against further state inspections and citations. The District Court granted United a preliminary injunction, but the Circuit reversed, holding that there was no federal question jurisdiction. The Circuit Court held that the controversy was based on a state law issue, the interpretation of the California Labor Code, and that the *United* panel of the Ninth Circuit did not even mention that Court's previous decisions in *Rath Packing* and *Stein.*

While the Supreme Court denied certiorari, Justice White's scholarly dissent from the denial is most illuminating. He noted that the Circuit seemed to rely on the concept that a plaintiff cannot get into federal court on the basis of a federal defense which plaintiff expected defendant to raise, citing *Louisville & Nashville Railroad Company v. Mottley* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) and other cases. Justice White noted:

> In each of the above cases, the federal plaintiff's cause of action against the defendant was not grounded in federal law; he merely sought to adjudicate the validity of an anticipated defense to his action. Here, United's complaint, as I read it, included the claim that under federal law the Federal Aviation Administration had exclusive jurisdiction to oversee safety at airline maintenance facilities and therefore, under the supremacy clause, state regulation was foreclosed. No part of this claim was grounded in state law.

*United Air Lines, supra,* 102 S.Ct. at 487 (opinion of White, J., dissenting from denial of certiorari).

Justice White noted that reliance on *Wycoff* was also misguided, and stated that the *Wycoff* court dismissed that action "because the federal claim was too abstract, anticipatory and not ripe for decision." 102 S.Ct. at 488.

Justice White noted the long accepted role of the federal courts in determining preemption issues.

In *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1957), the Illinois Commerce Commission set for hearing a complaint that a warehouseman was charging illegal rates under state law. The Commission denied the warehouseman's claim that the United States Warehouse Act superseded the authority of the Commission to regulate in the manner sought by the complaint. The warehouseman then filed a complaint in the United States District Court seeking an injunction against further state proceedings on the ground that the federal statute preempted state regulation. The Court of Appeals sustained this claim, and this Court affirmed. Federal jurisdiction, which was unchallenged, was grounded on 28 U.S.C. Sec. 1331 and Sec. 1337; federal jurisdiction, of course, could not have existed if foreclosed by fact that the federal claim could be and was presented as a defense in the state proceedings. *Rice* is but a significant example of a familiar pattern; the person or concern threatened by or involved in state enforcement proceedings repairs to the federal court claiming that the state law and the state proceedings have been preempted by congressional enactment. *Ray v. Atlantic Richfield,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Florida Avocado Growers v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz,* 312 U.S. 52,

61 S.Ct. 399, 85 L.Ed. 581 (1941). That the complainant in this case, in addition to claiming federal preemption, may also have claimed that the state law should not be construed to reach airline maintenance facilities does not defeat federal jurisdiction based on the preemption claim.

The suggestion that a defendant in a pending or threatened state action based on state law is foreclosed on jurisdictional grounds from seeking a federal declaratory judgment or an injunction based on the claim that the state action is barred by a federal statute or the Federal Constitution makes little sense in light of the holdings of this Court. Under the *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), line of cases, comity and federalism require a federal court to hold its hand and dismiss rather than interfere with a pending state criminal proceeding, by adjudicating a federal defense that has been or might be raised in that proceeding. Certain civil proceedings are subject to the same rule. But these holdings do not rest on jurisdictional grounds, and they do not apply when a state proceeding is not pending and in any event do not apply to all civil proceedings. Furthermore, if there is never federal jurisdiction when a state defendant has a dispositive defense grounded in federal law, the anti-injunction act would be mere surplusage. Under this theory, all such litigants would be required to pursue their federal claims in state court. Perhaps they should, but that is not what the present jurisdictional statutes and our cases construing them require.

*United Air Lines,* 102 S.Ct. at 487–488 (opinion of White, J., dissenting from denial of certiorari).

■ This Court is convinced that *Wycoff* should not be read as barring this claim, and agrees with Justice White that a claim that federal law preemption of state regulation is sufficient to satisfy jurisdictional requirements. Defendant contends, however, that Tenth Circuit case law must lead one to agree with defendant's position that there is no jurisdiction present in this case.

A detailed examination of the cases cited by defendant reveals, however, no bar to this Court's exercise of jurisdiction under the circumstances of this case.

The Court notes that, in four cases, the Tenth Circuit has cited the *Wycoff* dictum to support dismissal of actions for lack of jurisdiction. *Madsen v. Prudential Federal Savings & Loan Association,* 635 F.2d 797 (10th Cir.1980); *Monks v. Hetherington,* 573 F.2d 1164 (10th Cir.1978); *Chandler v. O'Bryan,* 445 F.2d 1045 (10th Cir.1971); *Product Engineering and Manufacturing, Inc. v. Barnes,* 424 F.2d 42 (10th Cir.1970).

*Product Engineering* concerned a state court contract action to enforce a patent license agreement and a federal court action by the state court defendant for a declaratory judgment that the patent was invalid. The Circuit cited *Wycoff* in affirming dismissal for lack of jurisdiction. The case is distinguishable because, at heart, it concerned a state law contract action and plaintiff was not subject to conflicting state and federal regulation. There was no issue of preemption.

*Chandler* is also inapposite. Plaintiff, a federal judge, sought a declaratory judgment and injunction against the enforcement of a state court libel judgment against plaintiff. The Court, relying on *Wycoff,* dismissed the action. It found that the state law libel case was the true issue, and there was no question of conflicting state and federal regulation. In addition, as noted by the Ninth Circuit,

Chandler's federal claim was purely in the nature of a defense to the libel action. Brought without reference to the underlying state court proceeding, Chandler's claim would be a useless gesture: no one would care whether Chandler acted under the protection accorded by the courts to his office if O'Bryan had refrained from suing him.

*Rath Packing Co., supra,* 530 F.2d at 1305.

As in *Rath Packing Co.,* the fact that Trailways claim is also a defense to a state court action is a mere truism, and Trailways

claim is meaningful beyond the pending state court action.

*Monks* also arose out of a state court libel action. In federal court, plaintiff sought declaratory judgment of immunity to the state court libel suit, based on First Amendment grounds. The Circuit affirmed the dismissal for lack of jurisdiction. Again, there existed no conflicting regulations and no preemption issue. Clearly, federal law was not at the heart of the dispute in *Monks.*

In a more recent decision, the Court considered a case where a savings and loan association brought a declaratory judgment action in which it asserted that it was not required to pay interest to borrowers on escrowed funds. The district court consolidated the suit with a class action brought in state court by borrowers and removed to federal court by lenders. The district court granted summary judgment in favor of lenders and the Circuit reversed. *Madsen, supra.*

The Madsen court relied on *Wycoff* in dismissing the action and held that the real controversy in the federal declaratory judgment action was whether Prudential was obligated by *contract* to pay interest in escrowed funds. The Court specifically noted:

> This case is not like *Conference of Federal Savings & Loan Associations v. Stein,* 604 F.2d 1256 (9th Cir.1979), *aff'd mem.,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980), *First Federal Savings & Loan Association v. Greenwald,* 591 F.2d 417 (1st Cir.1979), or others cited by Prudential, Intervenor, and *amicus curiae,* where state regulations directly conflict with federal regulations governing federal associations. No such conflict exists here.

*Madsen,* 635 F.2d at 804

The Court in *Madsen* noted that, at most, a question of federal law was lurking in the background. In the case at hand, the question of federal law is looking front and center and, in fact, occupies the entire stage. None of the Tenth Circuit cases discussed above deal with the situations of conflicting state and federal regulations or with preemption issues. The Court does not believe the considerations which motivated our Court of Appeals in the above cases are present in this case. The Court would note that the Tenth Circuit could have disapproved of *Stein* and *Greenwald* in the *Madsen* opinion, but instead chose to distinguish them. The Court believes that a federal question is at the heart of this case, and that the question is ripe and justiciable. Therefore, defendant's motion to dismiss on the basis of jurisdiction is overruled.

## ABSTENTION

Defendant contends that this Court should not exercise its jurisdiction, citing notions of equity, comity and federalism. The Court does not believe these factors warrant abstention in this case. The Supreme Court has repeatedly noted:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* —— U.S. ——, 103 S.Ct. 927, 936, 74 L.Ed.2d 765, quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959).

In *Moses H. Cone,* The Court reiterated that there are three categories of absten-

tion, as discussed in *Colorado River*. None of these three apply in this case.

■ Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law". *Colorado River, supra,* 424 U.S. at 815, 96 S.Ct. at 1244. The issue of preemption cannot, in this Court's view, be mooted or changed by any determination of state law. The issue before the Court is wholly one of federal law—the interpretation of the preemptive impact of the Bus Regulatory Reform Act of 1982.

■ "Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar." *Colorado River, supra,* 424 U.S. at 815, 96 S.Ct. at 1244. This category is clearly inapplicable to the case at hand, as there are no difficult questions of state law present.

■ "Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, . . . state nuisance proceedings antecedent to a criminal prosecution, . . . or collection of state taxes." *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1245–1246. This category is likewise inapplicable.

■ Nevertheless, even when a case does not fall within any of the three categories listed above, dismissal is sometimes proper on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246. As has been recently emphasized by the Supreme Court, however, the circumstances under which such a dismissal is warranted are "exceptional". *Moses H. Cone, supra,* 103 S.Ct. at 937. There is no hard and fast rule

for decisions of this type but the Supreme Court discussed certain relevant factors in *Colorado River*. These include: (1) whether a court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained in the concurrent lawsuits. *Colorado River, supra,* 424 U.S. at 818–819, 96 S.Ct. at 1246–1247. The weight given to the various factors will vary from case to case. *Moses H. Cone, supra,* 103 S.Ct. at 927.

The first two factors are clearly irrelevant to this case, as there has been no assumption of any *res* and no contention that this forum is less convenient to the parties than the state court. There is also, in the Court's view, no danger of piecemeal litigation. A decision to allow this court to decide the preemption issue does not cause piecemeal resolution of this dispute.

It is conceded that the state court action was first, but, as the Supreme Court points out in *Moses H. Cone* at 103 S.Ct. 940, this factor is to be applied in a pragmatic, flexible manner. The priority should be measured in terms of progress in the two actions. This court has proceeded to the summary judgment stage, and appears to be running ahead of the state court.

In addition to the four factors set forth in *Colorado River,* the Supreme Court emphasized another factor in *Moses H. Cone* —"The fact that federal law provides the rule of decision on the merits." *Moses H. Cone,* 103 S.Ct. at 941. This factor weighs heavily against surrender of jurisdiction, as federal law is the essence of this case.

■ The Court thus finds that dismissal is not warranted on the basis of equity, comity or federalism. The Court notes that abstention is particularly inappropriate when the federal claim is that, by preemption, the state has been ousted from jurisdiction. *Town of Springfield, Vt., supra* at 1154; *Chemical Specialties Manufacturing Association, Inc. v. Lowery,* 452 F.2d 431,

433 (2nd Cir.1971); *See Rath Packing Co. v. Becker, supra* at 1307.

## THE MERITS

▉ The standards for determining a motion for summary judgment are well established. To be entitled to summary judgment, movant must demonstrate beyond a reasonable doubt his right to prevail, and there must be no genuine disputes of material fact. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir.1978). The Court must view the evidence in the light most favorable to the party opposing the motion. *Romero v. Union Pacific Railroad,* 615 F.2d 1303 (10th Cir.1980). An examination of the facts by the Court reveals no genuine factual disputes.

The Supremacy Clause of the United States Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Art. VI, Cl. 2, U.S. Const.

▉ For preemption to occur, Congress must have authority to legislate in an area. *Jones v. Rath Packing Co., supra.* Congressional authority, under the Commerce Clause, to regulate motor carriers is unquestioned by the parties. The next question is whether Congress has in fact preempted state law on the regulation of changes in schedules. The Court begins with the assumption that Congress did not intend to displace state law. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

As the Court noted in *Rice,* however, Congressional purpose to displace state law may be shown in several ways. The scheme of federal regulation may be so pervasive as to show that Congress left no room for state supplementation. The federal interest in the area regulated may be so dominant that a federal system of enforcement will be assumed to preclude enforcement of state laws on the same subject. The state policy may produce a result inconsistent with the objective of the federal statute. *Rice, supra,* 331 U.S. at 230, 67 S.Ct. at 1152.

▉ Examination of the statutory language and the legislative history of the Bus Regulatory Reform Act of 1982 makes clear that the field of schedule changes is now one pervasively regulated by the federal government, that there is a dominant federal interest and that enforcement of the state policy is inconsistent with the objectives of the federal legislation. It is clear to the Court that state regulation of schedule changes such as are involved in this lawsuit is "an obstacle to the accomplishment and execution of the full purpose and objective of Congress." *Jones v. Rath Packing Co., supra,* 430 U.S. at 526, 97 S.Ct. at 1310.

The key portion, for purposes of this suit, of the Act is Section 17, which reads in pertinent part:

No State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to scheduling of interstate or intrastate transportation provided by motor common carrier of passengers subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title on an authorized interstate route ... except to the extent that notice, not in excess of 30 days, of changes in schedules may be required.

The intent of Congress is also revealed in Section 3 of the Act, titled "Congressional Findings", which states, in pertinent part:

[S]tate regulation of the motor bus industry has, in certain circumstances, unreasonably burdened interstate com-

merce; that overly protective regulation has resulted in operating inefficiencies and diminished price and service competition in the motor bus industry.

Congress did leave to the States a role, albeit reduced, on issues of termination of service. Section 16 of the Act states, in pertinent part:

When a motor common carrier of passengers having intrastate authority under the Laws of a State, and interstate authority under a certificate issued under section 10922 of this subchapter, to provide transportation over any route to any point in such State has proposed to discontinue providing transportation over such route to such point or to reduce its level of service over such route to such point to a level of which is less than one trip per day (excluding Saturdays and Sundays) and the carrier has requested the department, agency, or instrumentality of such State having jurisdiction over granting such discontinuance or reduction for permission to discontinue ... or reduce its level of service ... and the request has been denied ... the carrier may petition the Commission for such permission.

It is clear, despite defendant's arguments to the contrary, that this controversy concerns a schedule change and not a discontinuance of service. Congress explicitly stated the process for dealing with terminations of service, and clearly described termination or discontinuance as either a total discontinuance or a reduction in service to less than one trip per day, five days a week. Many bus schedules involve the use of different buses and thus require passengers to change buses. To state that Congress did not intend to reduce state regulation over schedule changes which include additional passenger changes in buses, flies in the face of the strong Congressional intent to reduce and, in fact, preempt state regulation of schedule changes. This intent is made crystal clear in the legislative history of the Act.

The "Background and Need" section in the Senate Report demonstrates Congressional concern with overregulation by the States:

State regulatory restrictions on entry, exit, and/or service frequency, and slow action by State regulatory commissions on fare increases, often have significant adverse impacts on intercity bus operations. Thus, these actions impose an unreasonable burden on interstate commerce and must be preempted.

S.Rep. No. 411, 97th Cong., 2nd Sess. 7–8, *reprinted in* 1982 *U.S.Code Cong. & Ad. News* 2308, 2314–2315.

The Senate Report's section by section analysis of the Act is also revealing. When discussing Section 16, concerning exit policy, the Senate report notes that the provisions of Section 16 apply when service is reduced to less than one trip per day "along a route". There is no indication that motor carriers could not alter the manner in which service was provided "along a route", as long as service was maintained at a minimum level along that route. This tends to negate KCC's argument that plaintiff's alteration is in fact a discontinuance, as service is clearly maintained at or above the required levels along the routes in question.

The Senate Report, when discussing Section 17, concerning state regulation of rates and practices, states:

States may not act on intrastate scheduling changes on authorized interstate routes or on intrastate rate reductions relating to transportation over such routes. For scheduling changes, carries (sic) may be required to give States 30 days advance notice.

S.Rep. No. 411, 97th Cong., 2nd Sess. 29, *reprinted in* 1982 Code Cong. & Ad.News 2308, 2336.

The Court believes that Congress has clearly and explicitly preempted state regulation of schedule changes, except that advance notice may be required. There is no room left for the states to supplement the

federal regulation in this area. State law which attempts to regulate such schedule changes is clearly precluded. The authority of the KCC to regulate schedule changes derives from K.S.A. Sec. 66–1, 112. To the extent that statute grants the KCC authority to regulate schedule changes which result in service not less than one trip per day, five days a week, it is clearly preempted.

In summary, the present facts of this case bring it squarely within the strong language and intent of Congress as expressed in the very recently enacted Bus Regulation Act of 1982 which implements the federal constitutional power to regulate interstate commerce. Hence, to the extent ongoing state official action, whether administrative or judicial, intrudes upon and violates such clearly expressed federal law, such state action is illegal and proscribed under the Supremacy Clause of the Constitution of the United States.

IT IS THEREFORE ORDERED AND DECLARED that the state of Kansas and the Kansas Corporation Commission are without authority to regulate in any manner the schedule changes of plaintiff, so long as service is not reduced below one trip per day, five days a week, with the exception that the State may require thirty days advance notice of such schedule changes.